[Cite as *State v. Williams*, 2017-Ohio-2650.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 104078 and 104849**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## FRANKLYN M. WILLIAMS

DEFENDANT-APPELLANT

## JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-15-593764-A, CR-15-593844-A,
CR-15-593998-A, and CR-15-594806-A

**BEFORE:** Blackmon, J., Kilbane, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** May 4, 2017

**ATTORNEY FOR APPELLANT**

Kathleen Amerkhanian
Kryszak & Associates Co., L.P.A.
5330 Meadow Lane Court, Suite A
Sheffield Village, Ohio 44035


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Andrea N. Isabella
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA A. BLACKMON, J.:

{¶1} In these consolidated appeals, Franklyn Williams ("Williams") appeals from his guilty pleas in four cases.  Williams assigns the following errors for our review:

> I. [Williams's] plea was not voluntary, knowing, or intelligent because he was given inaccurate information about judicial release and received ineffective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution relating to information conveyed regarding judicial release.

> II.  [Williams] received ineffective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution which invalidated the knowing, intelligent, and voluntary nature of his plea, due to the failure of counsel to follow up on the motion to suppress statements that [Williams] made to police.

> III.  Trial court erred in not holding a hearing on [Williams's] post-sentence motion to withdraw guilty plea.

{¶2} Having reviewed the record and pertinent law, we reverse and remand for further proceedings consistent with this opinion.  The apposite facts follow.

{¶3} On March 5, 2015, Williams was indicted in case no. CR-15-593764-A and charged with aggravated robbery, robbery, kidnapping, and having a weapon while under disability, all with one-year and three-year firearm specifications.  The aggravated robbery, robbery and kidnapping charges also contained a notice of prior conviction and a repeat violent offender specification.

{¶4} On March 17, 2015, Williams was indicted in case no. CR-15-593844-A and charged with aggravated robbery, robbery, kidnapping, theft, petty theft, and misuse of a

credit card. The aggravated robbery, robbery, and kidnapping charges also contained one-year and three-year firearm specifications, notice of prior conviction, and repeat violent offender specifications.

{¶5} On April 1, 2015, Williams was indicted in case no. CR-15-593998-A and charged with aggravated robbery, theft, misuse of credit cards, petty theft, and having a weapon while under disability. The aggravated robbery charge contained one-year and three-year firearm specifications, notice of prior conviction and repeat violent offender specifications, and the theft charge contained one-year and three year firearm specifications.

{¶6} On April 14, 2015, Williams was indicted in case no. CR-15-594806-A and charged with one count of willfully fleeing or eluding a police officer, with a furthermore clause alleging that Williams caused a substantial risk of serious physical harm, and one count of possession of less than the bulk amount of codeine, with a furthermore clause alleging a prior robbery conviction.

{¶7} The matters were consolidated for trial and proceeded to a jury trial on January 4, 2016. On the second day of trial, Williams entered into a plea agreement with the state. Under the terms of the plea, Williams pled guilty to: robbery with a three-year firearm specification and having a weapon while under disability with a three-year firearm specification in case no. CR-15-593764-A; robbery with a three-year firearm specification, theft, and misuse of a credit card in case no. CR-15-593844-A; robbery with a three-year firearm specification, theft, and having a weapon while under

disability in case no. CR-15-593998-A; and failure to comply in case no. CR-15-594806-A. All of the remaining charges and specifications were dismissed. Williams and the state also agreed to a total sentence of fourteen years of imprisonment for all four cases. The agreed sentence included a mandatory term of seven years (for the two three-year firearm specifications and the one-year term for failure to comply), to be served consecutively to a seven- year term for the remaining offenses.

{¶8} Williams now appeals and assigns three errors for our review. The record further discloses that after filing his notice of appeal, Williams filed a motion to withdraw his guilty pleas in all four cases.

## Crim.R. 11 and Judicial Release

{¶9} Williams asserts that his guilty plea was not knowingly, voluntarily, and intelligently made because his counsel provided him with erroneous advice regarding the possibility of obtaining judicial release after serving seven years. However, under R.C. 2929.20(C), Williams must actually serve all of the mandatory seven-year portion of his term, then five additional years, before being eligible for judicial release.

{¶10} With regard to the procedural law, we note that if a guilty plea is not made knowingly, intelligently, and voluntarily, then it is unconstitutional under both the United States Constitution and the Ohio Constitution. *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179, 660 N.E.2d 450. Under Crim.R. 11(C)(2), the trial court shall not accept a guilty plea in a felony case without personally addressing the defendant and:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty

involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶11} In determining whether a plea was entered knowingly, intelligently, and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7; *see also State v. Petitto*, 8th Dist. Cuyahoga No. 95276, 2011-Ohio-2391, ¶ 4.

{¶12} The trial court must strictly comply with those provisions of Crim.R. 11(C) that relate to the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, syllabus; *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), at paragraph one of the syllabus.

{¶13} As to the nonconstitutional rights, substantial compliance is sufficient. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31; *State v.*

*Hedenberg*, 8th Dist. Cuyahoga No. 102112, 2015-Ohio-4673, ¶ 12; *Veney* at ¶ 14. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.,* citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). If it "appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance." *State v. Caplinger*, 105 Ohio App.3d 567, 572, 664 N.E.2d 959 (4th Dist.1995), citing *Nero* at 108-109.

{¶14} The nonconstitutional rights listed in Crim.R. 11 include the defendant's right to be informed of the "maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control." In *State v. Simmons*, 1st Dist. Hamilton No. C-050817, 2006-Ohio-5760, the court held that this right did not additionally include the right to be informed that the defendant is not eligible for judicial release. The *Simmons* court noted that "[j]udicial release, as with the former concept of parole, is distinct from sentencing because it reduces a prison term that a court has already imposed. Therefore, the trial court need not inform a defendant about his eligibility for judicial release unless it is incorporated into a plea bargain." *Id.* at ¶ 13. In *Simmons*, the defendant asserted that his guilty plea was not knowingly and voluntarily made because the trial court did not inform him that he was ineligible for judicial release. In rejecting this assertion, the *Simmons* court noted that Simmons signed a written plea agreement acknowledging that he understood that he was ineligible

for any type of early release, the trial court specifically told Simmons that it would impose the 20-year sentence to which the parties had agreed, and also told him that he would have to serve that entire sentence except the time already served. *Id.* at ¶ 14.

{¶15} However, it is well settled that a guilty plea may be invalidated where the defendant is given *misinformation* regarding judicial release. *State v. Ealom*, 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365, citing *State v. Bush*, 3d Dist. Union No. 14-2000-44, 2002-Ohio-6146; *State v. Horch*, 154 Ohio App.3d 537, 2003-Ohio-5135, 797 N.E.2d 1051 (3d Dist.); *State v. Florence*, 3d Dist. Allen No. 1-03-60, 2004-Ohio-1956. The *Ealom* court held that "if a defendant is induced to enter a guilty plea by erroneous representations as to the applicable law, the plea has not been entered knowingly and intelligently, but the defendant must demonstrate prejudice resulting from the erroneous representation, i.e., that but for erroneous information, the plea would not have been made." *Id.* at ¶ 19; *State v. Mitchell,* 11th Dist. Trumbull No. 2004-T-0139, 2006-Ohio-618, ¶ 15. Therefore, although the trial court is not required to inform defendant that he is ineligible for judicial release, the court's statements will be reviewed in order to determine whether the plea was knowing, voluntary, and intelligently made. *State v. Silvers*, 181 Ohio App.3d 26, 2009-Ohio-687, 907 N.E.2d 805 (2d Dist.); *State v. Byrd*, 178 Ohio App.3d 646, 2008-Ohio-5515, 899 N.E.2d 1033 (2d Dist.). The *Byrd* court explained:

> [T]hough the mandatory sentence likewise renders the defendant ineligible for judicial release during his prison term, R.C. 2929.20(A), the court is not required by Crim.R. 11(C)(2)(a) to determine the defendant's understanding of that fact, absent some misstatement or misrepresentation that causes the

determination to be "applicable" in order to insure that the defendant's plea of guilty or no contest is knowing, intelligent, and voluntary.

*Id*. at ¶ 28.

**{¶16}** In determining whether Williams was given erroneous information in this matter, we note that judicial release is governed by R.C. 2929.20(C), which states in relevant part:

(C)　An eligible offender may file a motion for judicial release with the sentencing court within the following applicable periods:

(1)　If the aggregated nonmandatory prison term or terms is less than two years, the eligible offender may file the motion not earlier than thirty days after the offender is delivered to a state correctional institution or, if the prison term includes a mandatory prison term or terms, not earlier than thirty days after the expiration of all mandatory prison terms.

(2)　If the aggregated nonmandatory prison term or terms is at least two years but less than five years, the eligible offender may file the motion not earlier than one hundred eighty days after the offender is delivered to a state correctional institution or, if the prison term includes a mandatory prison term or terms, not earlier than one hundred eighty days after the expiration of all mandatory prison terms.

(3)　If the aggregated nonmandatory prison term or terms is five years, the eligible offender may file the motion not earlier than the date on which the eligible offender has served four years of the offender's stated prison term or, if the prison term includes a mandatory prison term or terms, not earlier than four years after the expiration of all mandatory prison terms.

(4)　If the aggregated nonmandatory prison term or terms is more than five years but not more than ten years, the eligible offender may file the motion not earlier than the date on which the eligible offender has served five years of the offender's stated prison term or, *if the prison term includes a mandatory prison term or terms, not earlier than five years after the expiration of all mandatory prison terms.*

(5) If the aggregated nonmandatory prison term or terms is more than ten years, the eligible offender may file the motion not earlier than the later of the date on which the offender has served one-half of the offender's stated prison term or the date specified in division (C)(4) of this section.

(Emphasis added.)

{¶17} In *State v. Cvijetinovic*, 8th Dist. Cuyahoga No. 81534, 2003-Ohio-563, this court considered the validity of Cvijetinovic's guilty plea where the trial court erroneously informed him that he "may" be eligible for judicial release after serving five years of the sentence, but he was actually sentenced to a non-probationable offense. *Id.* at ¶ 4. This court determined that the trial court substantially complied with Crim.R. 11 and also observed that Cvijetinovic and a codefendant were sentenced together so it was unclear that the trial court misstated the law as it applied to Cvijetinovic. *Id.* Assuming erroneous information had been given to Cvijetinovic, the trial court's use of the word "may" "connotes uncertainty rather than certainty" regarding the likelihood of judicial release. *Id.* This court additionally noted that a more compelling argument would have been presented had Cvijetinovic immediately asked for clarification or withdrawal of the guilty plea. *Id.* at ¶ 4-7.

{¶18} Conversely, in *Ealom*, this court considered the validity of Ealom's guilty plea where he was not eligible for judicial release, but the trial court erroneously informed him that "the first time you can become eligible for judicial release would be a minimum of three and a half years." *Id.* at ¶ 25. In determining that the guilty plea was

not voluntarily, intelligently, and knowingly made, this court noted that Ealom had mental health issues, asked for clarification about judicial release and the trial "court's response led Ealom to believe that he would be eligible for judicial release." *Id*. at ¶ 27.

{¶19} Similarly, in *State v. Horch*, 154 Ohio App. 3d 537, 2003- Ohio-5135, 797 N.E.2d 1051 (3d Dist.), the court concluded that Horch's guilty plea was not knowingly and intelligently made because she was erroneously informed that she would be eligible for judicial release after 180 days, but she was actually not eligible until serving four years of her sentence. *Accord State v. Sherman,* 5th Dist. Richard No. 2009-CA-132, 2010-Ohio-3959 (guilty plea was invalid where the trial court erroneously informed the defendant that he was eligible for judicial release when he was not, and filing of the motion for judicial release was an inducement to the guilty plea); *State v. Hendrix,* 12th Dist. Butler No. CA2012-12-265, 2013-Ohio-4978 (guilty plea was invalid where Hendrix was informed that he could potentially obtain judicial release, but he was ineligible for it).

{¶20} In this case, the transcript of the plea proceedings states:

At the break, Mr. Williams did ask the Court a question, which I want to memorialize on the record, which is would I consider a judicial release after seven or eight years. So, Mr. Williams, you should know that it's typically not my policy to grant a judicial release. You can always file a judicial release motion and they are considered. I consider them regularly. Whether I grant it or not, I can't make any promises right now. So there's lots of programs that go into what you're thinking about. There is a program called Reentry Court, for example. There is a program for people who have served a portion — a large portion of their sentence that go into transitional control services. So there are a lot of different options for you, but it's really up to you and what you do. So I'm not going to promise you

anything on the record and I never do to defendants. I mean, of course, you can file a motion.   Whether I grant it or not, I would not be able to answer.

THE DEFENDANT:   I don't want to ask you to grant my motion, just to consider it.   That's all.   Can I send it to you?

THE COURT:   Absolutely, I would consider it.

[DEFENSE COUNSEL:]   And for the record, your Honor, in talking to not only my client, but his mom, I explained that even I wouldn't guarantee the outcome of a motion for judicial release because half of, if not most of the consideration, deals with the change he makes in his life over the next eight years.   We can't predict that.        * * *

(Tr. 211-212.)   The record further indicates that following that exchange, the court had

the following discussion with the attorneys and outside Williams's presence:

[DEFENSE COUNSEL]:   You have to make a phone call and see if you can drop those specs.   I'm not saying he's going to get out, but the only way he's going to plead to 14 [years] is the vision of sugar plums to allow him to think he's doing possibly seven, so years don't change.

(Thereupon, a recess was taken.)

THE COURT:   Let's go back on the record at this time.   We've taken a short break.   [Defense counsel] very wisely pointed out that the RVO and the NPC specification on the counts made some changes which would not allow for Mr. Williams to have the possibility of filing a potential judicial release motion, and so the prosecutors are dismissing the notice of prior conviction and the repeat violent offender specification.   However, we still have a number of 14 [years] flat with the credit for the time being served and a waiver of costs and fines as the potential sentence here or is the sentence here today.   Mr. Williams, are you okay?

THE DEFENDANT:   Yeah.

THE COURT:   I have to sentence you to mandatory time on the failing to comply and two of the respective gun specifications.   Do you understand?

THE DEFENDANT:   Yes, your Honor.

THE COURT: Okay. And then after that, I give you the sentence for the other — the base charge, so the robbery or the having a weapon while under disability. Do you have any questions about that?

THE DEFENDANT: No, your Honor.

THE COURT: And, you know, I'm going to get this number and I'm going to bring it to 14 [years], which is the agreed upon number here. Do you understand?

THE DEFENDANT: Yes.

{¶21} This record demonstrates that Williams seemed quite concerned about the possibility of obtaining judicial release. He stopped the plea proceedings in order to ask the court about judicial release. The court and the attorneys responded to those inquiries by informing Williams that the motion could be considered after seven or eight years, but under R.C. 2929.20(C)(4), Williams is not eligible for judicial release until five years after he has served all of his mandatory sentence, which was 12 years. Clearly, Williams was misinformed as to when he would be eligible for judicial release. The record also indicates that after filing his notice of appeal, Williams filed a motion to withdraw his guilty pleas in all four cases.

{¶22} Consequently, we are unable to conclude that the trial court substantially complied with its duty to inform Williams of "the maximum penalty involved" because Williams received inaccurate information that erroneously led him to believe that he was eligible for judicial release after seven or eight years, when in fact he would not have been eligible until 12 years. Moreover, the record clearly demonstrates that but for this erroneous information, Williams would not have entered the guilty plea because his trial

was already underway when the plea discussion occurred. Williams's guilty plea was not knowingly, intelligently, and voluntarily made, and he suffered prejudice from the erroneous information regarding judicial release. This case is in line with *Ealom*.

{¶23} The first assigned error is well-taken.

{¶24} In light of our disposition of Williams's first assigned error, the two remaining errors that Williams assigns are now moot and will not be addressed. *See* App.R. 12(A)(1)(c).

{¶25} Judgment is reversed and remanded.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

___
PATRICIA A. BLACKMON, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR